IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| JIMMIE HUBBARD, | ) |
|       Plaintiff, | ) Case No. 4:05-CV-00029 |
| v. | ) **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
|       Defendant. | ) By: Jackson L. Kiser<br>)     Senior United States District Judge |

Before me is the *Report and Recommendation* of the United States Magistrate Judge. The Magistrate Judge recommends reversing the Commissioner's final decision, which denied the Plaintiff's claim for benefits, and recommends remanding the case for further proceedings. The Commissioner filed *Objections to the Magistrate's Report and Recommendation*. I reviewed the Magistrate Judge's *Report and Recommendation*, the Commissioner's *Objections*, and relevant portions of the record. The matter is now ripe for decision.

For the reasons stated below, I will **reject** the Magistrate Judge's *Report and Recommendation* and **will sustain** the Commissioner's *Objections*. The Commissioner's final decision denying the Plaintiff's claim for benefits will therefore be **affirmed,** and judgment will be **granted** for the Commissioner. This case will be **dismissed** from the docket of this Court.

**I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The Plaintiff, Jimmie L. Hubbard (hereinafter "Hubbard"), was fifty-eight years old at the time he applied for benefits on November 5, 2003. Hubbard testified that he has a fifth grade education. (R. at 173). Previously, he has worked as a floor buffer, farm hand, a factory laborer, and a tree trimmer. (R. at 99, 174-78). He claimed that he became disabled on October 24, 2003.

1

The Administrative Law Judge (hereinafter "ALJ") found that Hubbard was insured for benefits through the date of the ALJ's decision. (R. at 14). However, the ALJ found that Hubbard was not disabled and therefore not entitled to Disability Insurance Benefits or Supplemental Security Income payments. (R. at 20).

The Appeals Council held that there was no basis in the record to review or change the ALJ's decision; accordingly it denied review and adopted the ALJ's decision as the final decision of the Commissioner. (R. at 4 – 6). Hubbard appealed the decision to the District Court, and I referred the case to the Magistrate Judge. The Magistrate Judge recommended remanding the case to the ALJ, and the Commissioner objected to the Magistrate Judge's recommendation.

## II.     STANDARD OF REVIEW

Congress limits judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *see also, Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner of Social Security is charged with evaluating the medical evidence, assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20

2

C.F.R. §§ 404.1527-404, 1545 (2006); *Hays v. Sullivan*, 907 F.2d 1453 (1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927. If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then this Court must affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

### III.     DISCUSSION

To determine if Hubbard was disabled, and consequently entitled to Disability Insurance Benefits and Supplemental Security Income payments, the Code of Federal Regulations required the ALJ to conduct a five step analysis. 20 C.F.R. §§ 416.920, 404.1520. First, the ALJ had to determine if at the time he applied for benefits, Hubbard was employed in a "substantially gainful activity." If so, the ALJ could not find Hubbard disabled. If not, the analysis proceeded to the second step. 20 C.F.R. §§ 404.1520(b), 416.920(b). The ALJ concluded that Hubbard was not employed in a substantially gainful activity when he applied for benefits and proceeded to the second step. (R. at 14).

The second step of the evaluation required the ALJ to decide if Hubbard had a severe impairment that significantly limited his "physical or mental ability to do basic work activities." Absent a finding of severe impairment, the ALJ could not grant Hubbard disability benefits. 20 C.F.R. §§ 404.1520(c), 416.920(c). However, the ALJ found that Hubbard suffered from a severe impairment, his lowered intelligence quotient (hereinafter "IQ") test scores, and proceeded to the third step of the analysis. (R. at 14, 17).

After finding Hubbard had a severe impairment, the ALJ had to decide if the impairment

3

would last for twelve months and was "listed in appendix 1 or [was] equal to a listed impairment(s)." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ found that Hubbard had a listed impairment that lasted for more than twelve months, then Hubbard would have been entitled to disability benefits. However, the ALJ determined that Hubbard did not have a listed disability and proceeded to the next step of the analysis. (R. at 16–17).

The fourth step of the analysis required the ALJ to ascertain Hubbard's residual functioning capacity and compare it to the "physical and mental demands" of his prior relevant work. Based on that comparison, if the ALJ concluded that Hubbard was still capable of performing that work, then the ALJ would have found that Hubbard was not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). In this case, the ALJ determined that Hubbard could perform his prior work and was consequently not disabled. (R. at 17–18). Therefore, the ALJ did not need to proceed to the fifth step, a determination of whether Hubbard's residual functioning capacity would have allowed him to find other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

On appeal, Hubbard contends that, under the third step of the analysis discussed above, the ALJ should have concluded that Hubbard's disability met or equaled one of the listed disabilities in Appendix 1 of 20 C.F.R. 404, Subpart P. Specifically, section 12.05(C) of that Appendix states that an individual will be considered disabled if he or she can show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." The ALJ found that Hubbard satisfied the IQ prong of the test. (R. at 17,18). However, Hubbard maintains that the ALJ ignored evidence of his physical impediments, particularly his back pain, in determining that he did not have a physical or other mental impairment in addition to his lower IQ score.

4

Hubbard also asserted that the ALJ failed to consider this evidence in determining Hubbard's residual functioning capacity.

The Magistrate Judge agreed with Hubbard and found that "the medical record relating to plaintiff's physical maladies is sufficiently incomplete to compel reversal of the Commissioner's finding that plaintiff did not establish he suffered significant additional physical maladies which imposed work-related limitations of function as to qualify as a listed impairment under § 12.05C." Additionally, the Magistrate Judge found,

> By the same token, the undersigned is of the view that there is no credible medical evidence [countervailing] the report from plaintiff's psychologist, Blanche Williams, Ph.D., concerning the effects of plaintiff['s] mental condition on his work-related function. The state agency examining and consulting physicians reviewed only plaintiff's physical maladies and their limitations. Thus, there is no expert evidence in the record pertaining to plaintiff's psychological condition which would have permitted the Law Judge to reach a conclusion that plaintiff does not suffer significant additional psychological or mental limitations on his ability to perform work-related activities.

Finally, the Magistrate Judge concluded that these errors also impacted the ALJ's assessment of Hubbard's residual functional capacity in the fourth step of the analysis. As a result, the Magistrate Judge recommended that the case be remanded to the Commissioner "for further proceedings beginning with the third level of the sequential evaluation."

The Commissioner objected to this report and recommendation. The Commissioner noted that the objective medical evidence indicated that Hubbard did not suffer from any physical impairment that significantly limited his ability to function. Next, the Commissioner argued that the ALJ actually adopted Dr. Blanche's medical findings and only rejected her conclusions concerning Hubbard's ability to work, conclusions the ALJ was not legally required to accept.

5

I concur with the Commissioner. First, substantial evidence supported the ALJ's finding that Hubbard was not disabled under Appendix 1, § 12.05(C). Hubbard claims that his back problems constituted a physical impairment that imposed an "additional and significant work-related limitation of function." The record does contain evidence of Hubbard's back pain. Hubbard spoke about his back pain at the hearing and claimed that a doctor told him the that the bullet lodged in his back would give him problems as he aged. (R. at 180). A number of tests confirmed that Hubbard did indeed have a bullet in the right side of his back. (R. at 122–24). Additionally, a January 15, 2004, x-ray taken of Hubbard's lumbar spine series revealed "[multilevel] mild osteophyte formation suggesting mild degenerative disc disease." (R. at 124). On September 8, 2004, Hubbard was again diagnosed with a mild to moderate degenerative disc disease and prescribed medication. (R. at 144–46).

However, other evidence in the record supported a finding that the back pain did not constitute a "significant work related limitation of function." First, Paul Walker, D.O., examined Hubbard in February of 2004 and concluded that while Hubbard suffered from low back pain, that pain should not preclude Hubbard from working a normal day. (R. at 128). Walker found that Hubbard could walk, sit, raise and lower himself, and "don and doff his shoes and socks" with no difficulty. (R. at 127). Additionally, the examination revealed that Hubbard could tandem walk, stand and walk on his heels and tiptoes, and that his range of motion for his back was normal. (R. at 128). The ALJ lent "great weight" to Walker's examination and conclusions and noted that they were not contradicted by any other opinion by a treating or examining physician. (R. at 16).

Therefore, I believe that the ALJ's opinion regarding Hubbard's physical disabilities was

supported by substantial evidence in the record. Walker's exam found that Hubbard's back problems did not significantly effect his ability to work. While other reports in the record indicated that Hubbard did indeed have a bullet lodged in his back and that he suffered from a mild or moderate degenerative disc disease, those reports did not reach any conclusion about the effect of those conditions on Hubbard's ability to function in the work place. Therefore, the record certainly contained substantial evidence upon which the ALJ could find that Hubbard failed to carry his burden of proof in establishing a physical disability. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating that a claimant bears the burden of proof through the fourth step of the five-part analysis). Moreover, this same evidence was sufficient to support the ALJ's determination of Hubbard's residual functioning capacity.

Next, as stated above, the Magistrate Judge found that the ALJ improperly rejected Dr. Williams's findings concerning Hubbard's mental condition. However, the ALJ clearly stated that "the claimant has the specific mental functional limitations assessed by the examining psychologist." The ALJ did not quibble with Dr. Williams's medical findings; he only disagreed with her assessment that those limitations prohibited Hubbard from working. The regulations reserve the question of whether a claimant is disabled to the ALJ. While the ALJ may consider the opinions of treating medical sources, a statement by a medical source that a claimant is "unable to work" is not binding on the ALJ. 20 C.F.R. §§ 404.1527(e), 416.927(e). Therefore, the ALJ correctly adopted Dr. Williams's medical findings, which were not contradicted by the record, but rejected her conclusion that Hubbard could not return to work. This rejection was supported by substantial evidence because the evidence indicated that Hubbard had worked for many years with the same limitations diagnosed by Dr. Williams.

7

## IV.     CONCLUSION

For the reasons stated herein, I will **reject** the Magistrate Judge's *Report and Recommendation* and **will sustain** the Commissioner's *Objections*. The Commissioner's final decision denying the Plaintiff's claim for benefits will therefore be **affirmed,** and judgment will be **granted** for the Defendant. This case will be **dismissed** from the docket of this Court.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 26th day of September, 2006.

s/Jackson L. Kiser<br>
Senior United States District Judge